IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| SONUS NETWORKS, INC. D/B/A | § | |
| RIBBON COMMUNICATIONS | § | |
| OPERATING COMPANY, | § | |
| | § | Civil Action No. 2:18-cv-155 |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | JURY TRIAL DEMANDED |
| METASWITCH NETWORKS LTD | § | |
| AND METASWITCH NETWORKS | § | |
| CORP., | § | |
| | § | |
| Defendants. | § | |
| | § | |

## COMPLAINT

1.      Plaintiff Sonus Networks, Inc., brings this complaint against Defendants Metaswitch Networks Ltd and Metaswitch Networks Corporation (collectively, "Metaswitch") for continuing, willful infringement of seven patents previously found to be infringed by Metaswitch. Those seven patents are U.S. Patent Nos. 6,791,971; 6,885,658; 6,934,279; 7,047,561; 7,184,427; 7,990,984; and 7,995,589 (collectively, the "Asserted Patents").  Plaintiff Sonus Networks, Inc. further brings this complaint against Metaswitch for Metaswitch's false and misleading advertising regarding the accused products in this case.

## NATURE OF THE ACTION

2.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 et *seq*., specifically including 35 U.S.C. § 271 and for false advertising under the federal Lanham Act, 15 U.S.C. § 1125(a).

## THE PARTIES

3.      Plaintiff Sonus Networks, Inc. is the assignee and successor in interest to substantially all of the business operations and assets of GENBAND US LLC ("Genband"), including the Asserted Patents and including the right to collect past damages for infringement of the Asserted Patents.  Genband was the Plaintiff in the case *GENBAND US LLC v. Metaswitch Networks Ltd. et al*, 2-14-cv-00033 (E.D. Tex.) ("Prior Lawsuit"), where Metaswitch was found to infringe each of the Asserted Patents and each of the Asserted Patents was found to be not invalid.

4.      Sonus Networks, Inc. is a corporation organized under the laws of the State of Delaware and does business in Texas and across the United States as Ribbon Communications Operating Company (hereinafter "Ribbon").  Ribbon has a number of locations in the United States and has two regular and established places of business in this judicial district, which are located at 3605 East Plano Parkway, Plano, Texas 75074 and 1130 East Arapaho Road, Suite 200, Richardson, Texas 75081.

5.      Ribbon is a wholly owned subsidiary of Ribbon Communications, Inc., which is a publicly traded company that is listed on the NASDAQ Exchange.  Ribbon has two decades of leadership in real-time communications.  Built on world-class technology and intellectual property, Ribbon delivers intelligent, secure, embedded real-time communications.  Ribbon transforms fixed, mobile and enterprise networks from legacy environments to secure IP and cloud-based architectures that enable highly productive communications for consumers and businesses. Ribbon offers a complete portfolio of industry-leading and widely-deployed products, including Session Border Controllers (SBCs), Call Controllers, Media Gateways, Application Server, Diameter Signaling Controllers (DSCs), policy/routing servers, Signaling Gateways, mobile core

solutions and network security and analytics.  A large portion of the portfolio is available for deployment in-network or in virtualized cloud environments via software.

6.      Ribbon, including its predecessors in interest, has made significant investments in intellectual property.  Its broad patent portfolio covers a wide spectrum of improvements and innovations for VoIP communication technology.

7.      Defendant Metaswitch Networks Ltd is a company organized under the laws of the United Kingdom and has its principal place of business at 100 Church Street, Enfield, EN2 6BQ, United Kingdom.

8.      Defendant Metaswitch Networks Corporation is a wholly-owned subsidiary of Metaswitch Networks Ltd. and is a company organized under the laws of the State of Delaware and has its principal place of business at 11600 Sunrise Valley Drive, Reston, Virginia 20191.

9.      Defendant Metaswitch Networks Ltd and its wholly-owned subsidiary Metaswitch Networks Corporation (collectively, "Metaswitch") do business in Texas and across the United States as Metaswitch Networks.  Defendants have a regular and established place of business in this judicial district, which is located at 2801 Network Boulevard, Suite 810, Frisco, Texas 75034.

10.      Metaswitch offers for sale, sells, and imports into the United States products that compete with Ribbon's portfolio, such as Metaswitch's Integrated Softswitches (e.g., VP6010 and VP6050) and Call Feature Servers, Universal Media Gateways (e.g., MG6010 and MG6050), Perimeta Session Border Controllers, and the Metaswitch Telephony Application Servers (MTAS) (collectively the "accused products").

## JURISDICTION AND VENUE

*11.*      This Court has subject-matter jurisdiction over the patent infringement claims and Lanham Act claims pursuant to 28 U.S.C. §§ 1331 and 1338(a), this being a civil action arising

under the patent laws of the United States, namely, 35 U.S.C. § 1, *et seq.*, and the trademark laws of the United States, namely, the Lanham Act, 15 U.S.C. § 1051 *et seq.*

12.     Metaswitch is subject to personal jurisdiction in this judicial district.  Metaswitch Networks Ltd and Metaswitch Networks Corp. are registered with the State of Texas to conduct business in Texas.  In addition, Metaswitch regularly conducts business in Texas, including, but not limited to, offering for sale and selling to customers that are located in Texas or for use by customers in Texas products and services that infringe the Asserted Patents.  In addition, Metaswitch maintains a regular and established place of business in this judicial district. Metaswitch derives substantial revenue from the sale of infringing services and products distributed within this district and expects or should reasonably expect its actions to have consequences within this district.

13.     Venue lies in this judicial district pursuant to 28 U.S.C. § 1400(b) for at least the reason that Metaswitch has a regular and established place of business in this judicial district, and, on information and belief, Metaswitch has committed acts of infringement and false advertising in the State of Texas and this judicial district, including but not limited to, offering for sale and selling products and services that infringe one or more of Ribbon's Asserted Patents to customers that are located in Texas or for use by customers in Texas.  Venue also is proper in this judicial district pursuant to 28 U.S.C § 1391(c)(3) with respect to Metaswitch Networks Ltd., as Metaswitch Networks Ltd. is a foreign corporation and may be sued in any judicial district.

## THE ASSERTED PATENTS

14.     The Asserted Patents in this matter are the same patents that Metaswitch was found to infringe in the Prior Lawsuit.

15.     Ribbon is the owner of United States Patent No. 6,791,971, entitled "Method and Apparatus for Providing a Communications Service, for Communication and for Extending Packet Network Functionality" ("the '971 Patent").  Ribbon owns all substantial rights in the '971 Patent, including the right to exclude others and to sue and recover damages for infringement.  A copy of the '971 Patent is attached as Exhibit A.

16.     Ribbon is the owner of United States Patent No. 6,885,658, entitled "Method and Apparatus for Interworking Between Internet Protocol (IP) Telephony Protocols" ("the '658 Patent").  Ribbon owns all substantial rights in the '658 Patent, including the right to exclude others and to sue and recover damages for infringement.  A copy of the '658 Patent is attached as Exhibit B.

17.     Ribbon is the owner of United States Patent No. 6,934,279, entitled "Controlling Voice Communications over a Data Network" ("the '279 Patent").  Ribbon owns all substantial rights in the '279 Patent, including the right to exclude others and to sue and recover damages for infringement.  A copy of the '279 Patent is attached as Exhibit C.

18.     Ribbon is the owner of United States Patent No. 7,995,589, entitled "Controlling Voice Communications over a Data Network" ("the '589 Patent").  Ribbon owns all substantial rights in the '589 Patent, including the right to exclude others and to sue and recover damages for infringement.  A copy of the '589 Patent is attached as Exhibit D.  The '589 Patent is a continuation of the '279 Patent.

19.     Ribbon is the owner of United States Patent No. 7,047,561, entitled "Firewall for Real-Time Internet Applications" ("the '561 Patent").  Ribbon owns all substantial rights in the '561 Patent, including the right to exclude others and to sue and recover damages for infringement.  A copy of the '561 Patent is attached as Exhibit E.

20.     Ribbon is the owner of United States Patent No. 7,184,427, entitled "System and Method for Communicating Telecommunication Information from a Broadband Network to a Telecommunication Network" ("the '427 Patent").  Ribbon owns all substantial rights in the '427 Patent, including the right to exclude others and to sue and recover damages for infringement.  A copy of the '427 Patent is attached as Exhibit F.

21.     Ribbon is the owner of United States Patent No. 7,990,984, entitled "System and Method for Communicating Telecommunication Information from a Broadband Network to a Telecommunication Network" ("the '984 Patent").  Ribbon owns all substantial rights in the '984 Patent, including the right to exclude others and to sue and recover damages for infringement.  A copy of the '984 Patent is attached as Exhibit G.  The '984 Patent is a continuation of the '427 Patent.

## METASWITCH WILLFULLY INFRINGES THE ASSERTED PATENTS

22.     Metaswitch has been aware of the Asserted Patents and its infringement of those patents since at least January 2014, when the Original Complaint in the Prior Lawsuit was filed and served.  That Original Complaint alleged that Metaswitch's accused products infringe the Asserted Patents.

23.     During that lawsuit, Ribbon's predecessor Genband disclosed the bases of its infringement allegations, including in infringement contentions and in expert reports.  Those infringement contentions and expert reports showed infringement of each and every element of the claims asserted in this lawsuit, including claims 70, 80, and 92 of the '971 Patent; claims 1 and 11 of the '658 Patent; claim 25 of the '279 Patent; claim 15 of the '589 Patent; claims 6, 17, and 20 of the '561 Patent; claim 1 of the '427 Patent; and claim 1 of the '984 Patent (collectively, the "asserted claims").

24.     In the Prior Lawsuit, the jury found that Metaswitch infringed all of the asserted claims and that all the asserted claims are not invalid.  *See* Exhibit H, Dkt. No. 465 (Prior Lawsuit) at 2-3.   The jury awarded $8,168,400 for Metaswitch's infringement from January 2014 through August 2015, *see id.* at 4, and the Court awarded supplemental damages for Metaswitch's post-verdict, pre-judgment infringement regarding the versions of the accused products found infringing by the jury, *see* Dkt. No. 622 (Prior Lawsuit) at 34.

25.     The jury rejected Metaswitch's claims to have a royalty-free license or a right to a license at a FRAND rate, and the Court later confirmed in its findings of fact and conclusions of law that Metaswitch had no license to the asserted claims.  *See* Dkt. No. 582 (Prior Lawsuit).

26.     The Court in the Prior Lawsuit rejected all of Metaswitch's challenges to the jury's verdict.  *See* Dkt. No. 580 & 581 (Prior Lawsuit).   The Court also held a bench trial on Metaswitch's alleged equitable and license defenses.

27.     The Court issued detailed findings of fact and conclusions of law rejecting those defenses, explaining that Genband's claims were not unenforceable due to laches, implied waiver, equitable estoppel, or implied license, and also rejecting Metaswitch's Section 101 invalidity defenses.  *See* Dkt. No. 582 (Prior Lawsuit).

28.     The Court entered final judgment that Metaswitch infringed the asserted claims, that the asserted claims are not invalid, and are not unenforceable due to laches, implied waiver, equitable estoppel, or implied license.  *See* Dkt. No. 623 (Prior Lawsuit).

29.     Despite this knowledge that its products infringe valid and enforceable patents to which Metaswitch has no license, Metaswitch has deliberately chosen to continue to infringe the Asserted Patents by making, using, selling, offering to sell, and/or importing the accused products, as described in more detail below with respect to each count of infringement.   Metaswitch's

deliberate decision to continue infringement of the Asserted Patents constitutes egregious and wanton conduct.  Metaswitch's infringement of the Asserted Patents has been willful, done deliberately and with full knowledge that its products continue to infringe the Asserted Patents.

30.     Metaswitch's willful infringement is compounded by its false advertising about its infringement.  Metaswitch issued a false and misleading press release, which it also posted on its own website, in attempt to convince existing customers, potential future customers, investors, and the public at large that its allegedly redesigned products already had been judged to not infringe.  The press release is attached as Exhibit I.  In that press release, Metaswitch falsely stated that in deciding post-trial motions, the Court "noted that Genband has not met its burden of proving that Metaswitch's redesigned products are infringing products."  Ex. I.  But this is not what the Court said.  Rather, the Court noted only that it would not "expand the jury's verdict to encompass products that were redesigned after trial" and that if "Genband believes that certain redesigned products infringe its patents, it should seek appropriate relief as part of a new action."  Order (Dkt. 622, Prior Lawsuit) at 33-34.  Although the Court stated that Genband had not shown that "Metaswitch's redesigned products are not more than colorably different than the infringing products," *see id.* at 34, the Court never noted, as Metaswitch falsely claimed, that Genband had not met its burden of proving that Metaswitch's redesigned products were infringing.  Indeed, as Metaswitch well knew, Genband had not yet taken any discovery on Metaswitch's alleged re-designs and sought severance of the dispute over the re-designs into a separate action so that discovery could go forward.   *See, e.g.,* Dkt. 597 (Prior Lawsuit) at 15.  The clear goal of Metaswitch's press release was to try to falsely assure existing and potential future customers that Metaswitch's allegedly re-designed products were already determined to be non-infringing, in an effort to gain sales at Ribbon's expense.

**RIBBON SEEKS AN EXPEDITED SCHEDULE**

31.     Because the issues already decided against Metaswitch in the Prior Lawsuit are binding in this action, this lawsuit can be resolved on an expedited schedule.   Under the doctrines of claim preclusion, collateral estoppel, law of the case, and other legal finality doctrines, Metaswitch is precluded from re-litigating issues that were finally decided against it in the Prior Lawsuit.

32.     In the Prior Lawsuit, Metaswitch had the opportunity to raise defenses as to the enforceability and validity of the asserted claims and did raise such defenses, specifically including at least invalidity; prosecution history estoppel; equitable defenses (including waiver, implied waiver, laches, acquiescence, equitable estoppel, promissory estoppel, patent misuse, unfair competition, and unclean hands); failure to comply with FRAND/RAND obligations; license and exhaustion of patent rights pursuant to CableLabs Agreements; express license, implied license, patent exhaustion, and/or the single recovery rule; and patent unenforceability (inequitable conduct).   The Court entered final judgment against Metaswitch on Genband's asserted claims, and as a result, claim preclusion prohibits Metaswitch from raising any of those defenses in this action.  Moreover, having actually litigated and lost the issues of validity, enforceability (including laches, implied waiver, equitable estoppel, or implied license), and licenses for the asserted claims, Metaswitch is precluded from re-litigating those issues in this lawsuit.

33.     The Court's final judgment sets forth that Metaswitch infringes the asserted claims and that the asserted claims are not invalid and not unenforceable, and with respect to Metaswitch's products found to be infringing, awards Genband the full damages found by the jury from January 2014 through August 2015 plus supplemental damages at the jury's rate through the date of the judgment, and orders that the appropriate reasonable royalty, based on the post-verdict

circumstances, is 1.5 times the rate the jury awarded for Metaswitch's original infringement.  The Court ordered Metaswitch to pay an ongoing royalty for sales of the products found to infringe at that rate; thus, Metaswitch's obligation to pay a royalty for those products is already established. If Metaswitch fails to pay for sales of those infringing products, it will be in contempt of the Court's order and judgment in the Prior Lawsuit, and appropriate relief will be pursued.  By filing this lawsuit, Ribbon does not intend to waive any rights to pursue enforcement of its ongoing royalty or any argument that Metaswitch is precluded from re-litigating issues relevant to infringement, validity, enforceability, damages, or any other issues relevant to the previously adjudicated asserted patents, including Metaswitch's obligation to pay an ongoing royalty.

34.     As for Metaswitch's claimed design modifications, the Court has directed that the issue of infringement be decided in a separate action; thus, Ribbon has filed this suit, seeking a determination that Metaswitch's allegedly redesigned products continue to infringe and that Metaswitch's continued infringement is willful.  In light of the preclusive effect of the Prior Lawsuit against Metaswitch and the significant resources already expended by the parties and the Court to narrow the issues remaining in this case, Ribbon intends to seek entry of a streamlined and expedited schedule.

## PATENT INFRINGEMENT CLAIMS

### Count I – Infringement of U.S. Patent No. 6,791,971

35.     Ribbon incorporates by reference the allegations in the foregoing paragraphs.

36.     The '971 Patent addresses, in part, enabling communications services associated with a service control function from an Internet Protocol ("IP") service switching function.

37.     Metaswitch has known of the '971 Patent since at least January 2014, when Genband filed and served the Original Complaint in the Prior Lawsuit.

38.     Metaswitch's softswitches infringe claims 70, 80, and 92 of the '971 Patent. Metaswitch sells its softswitches alone in a product called a Call Feature Server (or CFS) and together with a media gateway in a product called an Integrated Softswitch. This complaint uses the term "softswitch" to refer to both Call Feature Servers and Integrated Softswitches.

39.     In the Prior Lawsuit, a jury found that Metaswitch's softswitches infringe claims 70, 80, and 92 of the '971 Patent.

40.     Nevertheless, Metaswitch continues to make, use, offer to sell, sell, and/or import its softswitches in the United States. To justify its continued activities with respect to softswitches, Metaswitch has alleged that it modified the softswitches to avoid infringement. This complaint will refer to these softswitches as "allegedly modified softswitches."

41.     The allegedly modified softswitches meet each and every element of claims 70, 80, and 92 of the '971 Patent for at least the reasons presented in the Prior Lawsuit.

42.     By making, using, offering to sell, selling, and importing the allegedly modified softswitches in the United States, Metaswitch continues to the infringe claims 70, 80, and 92 of the '971 Patent for at least the reasons presented in the Prior Lawsuit.

43.     Metaswitch's customers' use of the allegedly modified softswitches constitutes infringement of claims 70, 80, and 92 of the '971 Patent for at least the reasons presented in the Prior Lawsuit. Metaswitch knew or should have known that its customers' activities constitute infringement, and Metaswitch was willfully blind to the fact that its customers' activities constitute infringement. Thus, by encouraging its customers to buy and use the allegedly modified softswitches and knowing the same infringe, Metaswitch also continues to induce its customers to infringe claims 70, 80, and 92 of the '971 Patent.

44.     Metaswitch's ongoing direct and indirect infringement is willful.  Metaswitch is and remains on notice of the '971 Patent and the accused infringement and continues to deliberately infringe.

45.     As a direct and proximate result of Metaswitch's acts of infringement, Ribbon has suffered and continues to suffer damages and irreparable harm.

## Count II – Infringement of U.S. Patent No. 6,885,658

46.     Ribbon incorporates by reference the allegations in the foregoing paragraphs.

47.     The '658 Patent addresses, in part, techniques for interworking between different IP telephony protocols.

48.     Metaswitch has known of the '658 Patent since at least January 2014, when Genband filed and served the Original Complaint in the Prior Lawsuit.

49.     Metaswitch's softswitches infringe claims 1 and 11 of the '658 Patent.

50.      In the Prior Lawsuit, a jury found that Metaswitch's softswitches infringe claims 1 and 11 of the '658 Patent.

51.     Nevertheless, Metaswitch continues to make, use, offer to sell, sell, and/or import its softswitches in the United States.  To justify its continued activities with respect to softswitches, Metaswitch has alleged that it modified the softswitches to avoid infringement.  This complaint will refer to these softswitches as "allegedly modified softswitches."

52.     The allegedly modified softswitches meet each and every element of claims 1 and 11 of the '658 Patent for at least the reasons presented in the Prior Lawsuit.

53.     By making, using, offering to sell, selling, and importing the allegedly modified softswitches in the United States, Metaswitch continues to the infringe claims 1 and 11 of the '658 Patent for at least the reasons presented in the Prior Lawsuit.

54.     Metaswitch's customers' use of the allegedly modified softswitches constitutes infringement of 1 and 11 of the '658 Patent for at least the reasons presented in the Prior Lawsuit. Metaswitch knew or should have known that its customers' activities constitute infringement, and Metaswitch was willfully blind to the fact that its customers' activities constitute infringement. Thus, by encouraging its customers to buy and use the allegedly modified softswitches and knowing the same infringe, Metaswitch also continues to induce its customers to infringe claims 1 and 11 of the '658 Patent.

55.     Metaswitch's ongoing direct and indirect infringement is willful.  Metaswitch is and remains on notice of the '658 Patent and the accused infringement and continues to deliberately infringe.

56.     As a direct and proximate result of Metaswitch's acts of infringement, Ribbon has suffered and continues to suffer damages and irreparable harm.

### Count III – Infringement of U.S. Patent Nos. 6,934,279 and 7,995,589

57.     Ribbon incorporates by reference the allegations in the foregoing paragraphs.

58.     The '279 Patent and '589 Patent address, in part, techniques for enabling communications over a data network using a user interface.

59.     Metaswitch has known of the '279 Patent and '589 Patent since at least January 2014, when Genband filed and served the Original Complaint in the Prior Lawsuit.

60.     Metaswitch's Multiservice Telephony Application Server (MTAS) infringes claim 25 of the '279 Patent and claim 15 of the '589 Patent.  The MTAS is a combination of a Call Feature Server with what Metaswitch calls an enhanced application server.

61.     In the Prior Lawsuit, a jury found that Metaswitch's MTAS infringes claim 25 of the '279 Patent and claim 15 of the '589 Patent.

62.     Nevertheless, Metaswitch continues to make, use, offer to sell, sell, and/or import its MTAS in the United States.  To justify its continued activities with respect to MTAS, Metaswitch has alleged that it removed functionality to avoid infringement.  This complaint will refer to this MTAS as "allegedly modified MTAS."

63.     The allegedly modified MTAS meets each and every element of claim 25 of the '279 Patent and claim 15 of the '589 Patent for at least the reasons presented in the Prior Lawsuit.

64.     By making, using, offering to sell, selling, and importing the allegedly modified MTAS in the United States, Metaswitch continues to the infringe claim 25 of the '279 Patent and claim 15 of the '589 Patent for at least the reasons presented in the Prior Lawsuit.

65.     Metaswitch's customers' use of the allegedly modified MTAS constitutes infringement of claim 25 of the '279 Patent and claim 15 of the '589 Patent for at least the reasons presented in the Prior Lawsuit.  Metaswitch knew or should have known that its customers' activities constitute infringement, and Metaswitch was willfully blind to the fact that its customers' activities constitute infringement.  Thus, by encouraging its customers to buy and use the allegedly modified MTAS and knowing the same infringe, Metaswitch also continues to induce its customers to infringe claim 25 of the '279 Patent and claim 15 of the '589 Patent.

66.     Metaswitch's ongoing direct and indirect infringement is willful.  Metaswitch is and remains on notice of the '279 Patent and '589 Patent and the accused infringement and continues to deliberately infringe.

67.     As a direct and proximate result of Metaswitch's acts of infringement, Ribbon has suffered and continues to suffer damages and irreparable harm.

### Count IV – Infringement of U.S. Patent No. 7,047,561

68.     Ribbon incorporates by reference the allegations in the foregoing paragraphs.

14

69.     The '561 Patent addresses, in part, a smart firewall.

70.     Metaswitch has known of the '561 Patent since at least January 2014, when Genband filed and served the Original Complaint in the Prior Lawsuit.

71.     Metaswitch's Perimeta Session Border Controller (SBC) infringes claims 6, 17, and 20 of the '561 Patent.

72.      In the Prior Lawsuit, a jury found that Metaswitch's Perimeta infringes claims 6, 17, and 20 of the '561 Patent.

73.     Nevertheless, Metaswitch continues to make, use, offer to sell, sell, and/or import its Perimeta in the United States.  To justify its continued activities with respect to Perimeta, Metaswitch has alleged that it modified Perimeta to avoid infringement.  This complaint will refer to this Perimeta as "allegedly modified Perimeta."

74.     The allegedly modified Perimeta meets each and every element of claims 6, 17, and 20 of the '561 Patent for at least the reasons presented in the Prior Lawsuit.

75.     By making, using, offering to sell, selling, and importing the allegedly modified Perimeta in the United States, Metaswitch continues to the infringe claims 6, 17, and 20 of the '561 Patent for at least the reasons presented in the Prior Lawsuit.

76.     Metaswitch's customers' use of the allegedly modified Perimeta constitutes infringement of claims 6, 17, and 20 of the '561 Patent for at least the reasons presented in the Prior Lawsuit.  Metaswitch knew or should have known that its customers' activities constitute infringement, and Metaswitch was willfully blind to the fact that its customers' activities constitute infringement.  Thus, by encouraging its customers to buy and use the allegedly modified Perimeta and knowing the same infringe, Metaswitch also continues to induce its customers to infringe claims 6, 17, and 20 of the '561 Patent.

77.     Metaswitch's ongoing direct and indirect infringement is willful.  Metaswitch is and remains on notice of the '561 Patent and the accused infringement and continues to deliberately infringe.

78.     As a direct and proximate result of Metaswitch's acts of infringement, Ribbon has suffered and continues to suffer damages and irreparable harm.

### Count V – Infringement of U.S. Patent Nos. 7,184,427 and 7,990,984

79.     Ribbon incorporates by reference the allegations in the foregoing paragraphs.

80.     The '427 Patent and '984 Patent address, in part, techniques for communicating telecommunication information associated with subscribers between a telecommunication network and a broadband network.

81.     Metaswitch has known of the '427 Patent and '984 Patent since at least January 2014, when Genband filed and served the Original Complaint in the Prior Lawsuit.

82.     Metaswitch's media gateways infringe claim 1 of the '427 Patent and claim 1 of the '984 Patent.  Metaswitch sells its media gateways alone as a product called the Universal Media Gateway and together with a Call Feature Server (CFS) in a product called an Integrated Softswitch.  This complaint uses the term "media gateway" to refer to both the Universal Media Gateway and Integrated Softswitch.

83.     In the Prior Lawsuit, a jury found that Metaswitch's media gateways infringe claim 1 of the '427 Patent and claim 1 of the '984 Patent.

84.     Nevertheless, Metaswitch continues to make, use, offer to sell, sell, and/or import its media gateways in the United States.  To justify its continued activities with respect to media gateways, Metaswitch has alleged that it modified the media gateways to avoid infringement.  This complaint will refer to these media gateways as "allegedly modified media gateways."

85.     The allegedly modified media gateways meet each and every element of claim 1 of the '427 Patent and claim 1 of the '984 Patent for at least the reasons presented in the Prior Lawsuit.

86.     By making, using, offering to sell, selling, and importing the allegedly modified media gateways in the United States, Metaswitch continues to the infringe claim 1 of the '427 Patent and claim 1 of the '984 Patent for at least the reasons presented in the Prior Lawsuit.

87.     Metaswitch's customers' use of the allegedly modified media gateways constitutes infringement of claim 1 of the '427 Patent and claim 1 of the '984 Patent for at least the reasons presented in the Prior Lawsuit.  Metaswitch knew or should have known that its customers' activities constitute infringement, and Metaswitch was willfully blind to the fact that its customers' activities constitute infringement.  Thus, by encouraging its customers to buy and use the allegedly modified media gateways and knowing the same infringe, Metaswitch also continues to induce its customers to infringe claim 1 of the '427 Patent and claim 1 of the '984 Patent.

88.     Metaswitch's ongoing direct and indirect infringement is willful.  Metaswitch is and remains on notice of the '427 Patent and '984 Patent and the accused infringement and continues to deliberately infringe.

89.     As a direct and proximate result of Metaswitch's acts of infringement, Ribbon has suffered and continues to suffer damages and irreparable harm.

## **FALSE ADVERTISING CLAIM**

### **Count VI – False Advertising under the Lanham Act**

90.     Ribbon incorporates by reference the allegations in the foregoing paragraphs.

91.     In violation of section 1125(a)(1)(B) of the Lanham Act, Metaswitch has made, in bad faith, material and false representations regarding the accused products in interstate commerce that are likely to deceive the intended audience and influence their purchasing decisions, including

at least the statements in the press release described in this complaint.  These statements were designed and intended to confuse Metaswitch's existing customers and potential future customers.  As a direct and proximate result, Ribbon has been damaged or is likely to be damaged by these statements, in an amount to be determined at trial.  Thus, Metaswitch is liable for willful false advertising regarding the accused products, in violation of the Lanham Act.

92.     For example, Metaswitch issued a press release, which it also posted on its own website, in attempt to convince existing customers, potential future customers, investors, and the public at large that its allegedly redesigned products do not infringe.  *See* Ex. I.

93.     In that press release, Metaswitch stated that in deciding post-trial motions, the Court "noted that Genband has not met its burden of proving that Metaswitch's redesigned products are infringing products."  *Id.*

94.     This statement is false and misleading.  The Court noted that it would not "expand the jury's verdict to encompass products that were redesigned after trial" and that if "Genband believes that certain redesigned products infringe its patents, it should seek appropriate relief as part of a new action."  Order (Dkt. 622, Prior Lawsuit) at 33-34.  Although the Court stated that Genband had not shown that "Metaswitch's redesigned products are not more than colorably different than the infringing products," *see id.* at 34, the Court never stated, as Metaswitch falsely stated, that Genband had not met its burden of proving that Metaswitch's redesigned products were infringing.  Indeed, as Metaswitch well knew, Genband had not yet taken any discovery on Metaswitch's alleged re-designs and sought severance of the dispute over the re-designs into a separate action so that discovery could go forward.  *See, e.g.,* Dkt. 597 (Prior Lawsuit) at 15.

95.     The clear goal of Metaswitch's press release was to try to falsely assure existing and potential future customers that Metaswitch's allegedly re-designed products were already

determined to be non-infringing, in an effort to gain sales at Ribbon's expense.  The Metaswitch press release therefore constitutes willful false advertising under the federal Lanham Act, 15 U.S.C. § 1125(a).

## JURY DEMAND

96.     Pursuant to Federal Rule of Civil Procedure 38(b), Ribbon hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Ribbon prays for judgment in its favor granting the following relief:

A.     A finding that Metaswitch has directly infringed and/or induced others to infringe the Asserted Patents;

B.     An award of damages pursuant to 35 U.S.C. § 284 adequate to compensate Ribbon for Metaswitch's infringement of the Asserted Patents, including both pre- and post-judgment interest and costs as fixed by the Court;

C.     To the extent warranted by the evidence in this case, a permanent injunction against Metaswitch and its officers, agents, servants, employees, and representatives, and all others in active concert or participation with them, from further infringing the Asserted Patents and a royalty for any infringement not included in the jury's verdict;

D.     A finding that Metaswitch's infringement of the Asserted Patents is willful;

E.     An increase in the damages to be awarded to Ribbon of three times the amount found by the jury and/or assessed by the Court;

F.     A finding that the Metaswitch press release constitutes willful and deliberate false advertising under 15 U.S.C. § 1125(a)(1)(B);

G.      Preliminary and permanent injunctions ordering Metaswitch to, *inter alia*, immediately cease all false and/or misleading advertising, marketing, promoting, or statements concerning Ribbon and/or Genband;

H.      An order that Metaswitch engage in a program of corrective advertising, subject to the Court's approval, to ameliorate the false or misleading information that Metaswitch has promulgated;

I.      An award of damages in an amount sufficient to compensate Ribbon for the injury it has sustained as a consequence of Metaswitch's unlawful false advertising;

J.      An award trebling any such damages;

K.      An order granting a disgorgement of Metaswitch's profits;

L.      A finding that this case is exceptional under 15 U.S.C. § 1117 and awarding Ribbon its attorneys' fees pursuant to 15 U.S.C. § 1117;

M.      A declaration that this is an exceptional case within the meaning of 35 U.S.C. § 285, and a corresponding award of Ribbon's reasonable attorney fees incurred in connection with the litigation; and

N.      Any additional and further relief the Court may deem just and proper under the circumstances.

Dated:  April 18, 2018                          Respectfully submitted,

By: */s/ Douglas M. Kubehl*
Douglas M. Kubehl, Lead Counsel
 Texas State Bar No. 00796909
 E-Mail: doug.kubehl@bakerbotts.com
Jeffery D. Baxter
 Texas State Bar No. 24006816
 E-Mail: jeff.baxter@bakerbotts.com
Kurt M. Pankratz
 Texas State Bar No. 24013291
 E-Mail: kurt.pankratz@bakerbotts.com
Susan Cannon Kennedy
 Texas State Bar No. 24051663
 E-Mail: susan.kennedy@bakerbotts.com
**BAKER BOTTS L.L.P.**
2001 Ross Avenue
Dallas, Texas 75201
Telephone: (214) 953-6500
Facsimile: (214) 953-6503

Chris Ponder
 Texas State Bar No. 24065916
 E-Mail: chris.ponder@bakerbotts.com
**BAKER BOTTS L.L.P.**
1001 Page Mill Road
Building One, Suite 200
Palo Alto, CA 94304
Telephone: (650) 739-7563
Facsimile: (650) 739-7663

**ATTORNEYS FOR SONUS NETWORKS, INC., D/B/A/ RIBBON COMMUNICATIONS OPERATING COMPANY**